**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**HENRY RAUL ROSAS FLORES,**

**Petitioner,**

**v.** **Civil Action No. 3:26cv370**

**JEFFREY CRAWFORD,** ***et al.*****,**

**Respondents.**

## MEMORANDUM OPINION

This matter comes before the Court on Petitioner Henry Raul Rosas Flores's ("Petitioner") Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (the "Amended Petition"). (ECF No. 10.) In the Amended Petition, Petitioner challenges his detention by Immigration and Customs Enforcement ("ICE"), arguing that ICE has improperly detained him under 8 U.S.C. § 1225 of the Immigration and Nationality Act ("INA"), and that ICE's revocation of his humanitarian parole under 8 U.S.C. § 1182(d)(5)(A) deprived him of his constitutional right to due process of law under the Fifth Amendment to the United States Constitution.[1] (ECF No. 10 ¶¶ 51–61.)

For the reasons articulated below, the Court will grant the Amended Petition. (ECF No. 10.) The Court will order Respondents to release Petitioner.

---

[1] The Fifth Amendment to the United States Constitution provides, in pertinent part:

> No person shall . . . be deprived of life, liberty or property without due process of law.

U.S. Const. amend. V.

# I. Factual and Procedural Background

## A. Factual Background[2]

Petitioner "is a native and citizen of Peru who entered the United States in October 2022." (ECF No. 10 ¶ 3.) "On or about October 1, 2022," Department of Homeland Security ("DHS") officials apprehended Petitioner after he "entered the United States at or near the U.S.-Mexico border near Lukeville, AZ." (ECF No. 5-1 ¶ 6.)

"On October 3, 2022, DHS paroled Petitioner out of custody and placed Petitioner on Alternative to Detention as a condition of parole," requiring him "to report to [Enforcement and Removal Operations] for scheduled check-ins." (ECF No. 5-1 ¶ 7.) According to a declaration filed by Respondents,[3] Petitioner's parole was set to expire on December 3, 2022. (ECF No. 5-1 ¶ 7.) Petitioner timely applied for asylum on September 19, 2023. (ECF No. 1-4, at 2.) ICE did not take Petitioner into custody in December 2022, and Petitioner continued to attend voluntary ICE check-ins after December 2022 and until his detainment in February 2026. (*See* ECF No. 5-1 ¶¶ 7–9; ECF No. 10 ¶ 3.)

"On August 4, 2024, Petitioner was arrested in Loudoun County, Virginia and was subsequently charged with petit larceny." (ECF No. 10 ¶ 41.) On April 23, 2025, Petitioner was convicted of misdemeanor petit larceny and sentenced to thirty days' imprisonment, all of which was suspended. (ECF No. 10 ¶ 41.)

---

[2] The Court recites the facts as alleged by Petitioner in his Amended Petition, (ECF No. 10), and by the United States as alleged in Supervisory Detention and Deportation Officer Justin Richardson's declaration sworn under penalty of perjury, which it attaches to its brief, (ECF No. 5-1). Where appropriate, the Court has noted facts that the parties contest. Otherwise, the facts recited by the Court are uncontested.

[3] Petitioner does not address whether or when his parole was set to terminate, and he only acknowledges that Respondents assert that it expired on December 3, 2022. (ECF No. 19, at 6.) Neither party includes a copy of the parole documents with their briefing.

"On February 18, 2026, Petitioner appeared for a previously scheduled appointment with ICE Enforcement and Removal Operations as required by the conditions of his supervision." (ECF No. 10 ¶ 42.) "During that appointment, ICE officers took Petitioner into custody" and DHS "served Petitioner with a Notice to Appear charging him as removable pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i)."[4] (ECF No. 10 ¶ 42.)

"Following his arrest, Petitioner was transferred to the Farmville Detention Center, where he has remained continuously detained since February 18, 2026." (ECF No. 10 ¶ 43.) "On March 11, 2026, the Petitioner requested a custody redetermination hearing before an Immigration Judge." (ECF No. 10 ¶ 44; ECF No. 5-1 ¶ 11.) "On March 24, 2026, the Immigration Judge denied the Petitioner's request for a custody determination after concluding that the Immigration Court lacked jurisdiction" over his custody redetermination. (ECF No. 10 ¶ 45; ECF No. 5-1 ¶ 11.)

According to Petitioner's briefing, on May 28, 2026, "[t]he Immigration Judge ordered Petitioner removed." (ECF No. 19, at 7.) On June 29, 2026, "Petitioner timely appealed that decision to the BIA . . . and the appeal remains pending."[5] (ECF No. 19, at 7.)

### B. Procedural Background

On April 29, 2026, Petitioner filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (the "Petition"). (ECF No. 1.) On May 1, 2026, the Court ordered

---

[4] A Notice to Appear is a "'[c]harging document' that 'initiates a proceeding before an Immigration Judge.'" *Hasan v. Crawford*, 800 F. Supp. 3d 641, 648 n.3 (E.D. Va. 2025).

[5] The Executive Office of Immigration Review's Automated Case Information system corroborates Petitioner's representations. *See* EOIR Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation, A-Number: 241-905-097, Nationality: Peru (last visited Sep. 8, 2026).

Respondents to file a notice indicating whether the factual and legal issues presented in the Petition differ in any material fashion from those presented in *Duarte Escobar v. Perry*, 807 F. Supp. 3d 564 (E.D. Va. 2025). (ECF No. 4, at 1.) On May 8, 2026, Respondents filed an Opposition to the Petition for a Writ of Habeas Corpus (the "Opposition"), wherein they argued that the Petition "is materially different from *Duarte Escobar*" because Petitioner "was arrested and detained without a warrant while arriving in the United States," before being paroled into the United States.[6] (ECF No. 5, at 1.)

On July 13, 2026, now proceeding with Counsel, Petitioner filed a motion for leave to file an amended petition for a writ of habeas corpus, (ECF No. 7), which the Court granted on July 14, 2026, (ECF No. 9). On July 20, 2026, Petitioner filed the operative Amended Petition. (ECF No. 10.) On July 24, 2026, Respondents opposed the Amended Petition, wherein they incorporated their brief opposing the first Petition. (ECF No. 12.) Petitioner replied on August 3, 2026. (ECF No. 19.)

---

[6] Respondents also assert that, although the Petition challenges only whether Petitioner is properly subject to mandatory detention pursuant to § 1225(b), a detainee may alternatively be subject to mandatory detention pursuant to § 1226(c). (ECF No. 5, at 1–2.) Respondents request the Court to allow the Immigration Court to address the section's applicability "in the first instance," should the Court grant Petitioner relief. (ECF No. 5, at 19.)

As Petitioner correctly notes, DHS classified Petitioner under § 1225(b)(2), and the Immigration Judge denied jurisdiction under the same basis. (ECF No. 10 ¶ 53; *see* ECF No. 1-2, at 2 (citing *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025) as the sole basis for lack of jurisdiction for a bond hearing).) Similarly, Respondents merely assert that § 1226(c) *could* provide a basis for Petitioner's mandatory detention, (ECF No. 5, at 1–2), but do not identify a particular subsection of § 1226(c) or analyze its elements. Because Respondents do not purport to be detaining Petitioner pursuant to § 1226(c) and because the Court will find that Respondents denied Petitioner due process in revoking his parole, the Court need not address whether § 1226(c) applies to Petitioner.

## II. Standard of Review

### A. Petitions for Writs of Habeas Corpus Under 28 U.S.C. § 2241

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." *Id.* "A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations and brackets omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

### B. Detention Under 8 U.S.C. §§ 1225 and 1226

8 U.S.C. § 1225(a) provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). Section 1225 then divides "applicants for admission" into two categories under § 1225(b)(1) and § 1225(b)(2).

Section 1225(b)(2) pertains to the Amended Petition and the parties' filings. Section 1225(b)(2) provides that if an immigration officer "determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). As this Court has previously explained, § 1225 covers individuals "*actively* seeking admission into the country, and not those who have already entered the country." *Duarte Escobar v. Perry*, 807 F. Supp. 3d 564, 576 (E.D. Va. 2025) (emphasis in original) (quoting *Quispe v. Crawford*, No. 1:25-cv-1471 (AJT), 2025 WL 2783799, at *5 (E.D. Va. Sep. 29, 2025)). Because individuals detained under this section are subject to *mandatory* detention, § 1225(b)(2) "does not grant detainees a bond hearing." *Id.* at 569.

8 U.S.C. § 1226, in contrast, establishes "the default rule" for detaining and removing aliens "'already present in the United States.'" *Id.* at 578 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018)). Section 1226(a) provides that, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Pending the removal decision, the Attorney General may "continue to detain the arrested alien," "*release the alien on . . . bond of at least $1,500*," or "release the alien on . . . conditional parole." *Id.* § 1226(a)(1)–(2) (emphasis added). Thus, individuals subject to detention under § 1226(a) are entitled to a bond hearing.

As this Court has previously explained, §§ 1225 and 1226 create a dichotomy: § 1225(b)(2)(A) "covers aliens *seeking admission* to the United States" and § 1226(a) "covers aliens *already present* in the United States." *Duarte Escoboar*, 807 F. Supp. 3d at 578 (emphasis in original). A detainee seeking bond must therefore demonstrate that they are detained subject to § 1226, which permits bond determinations, rather than § 1225, which does not.

### C. **Humanitarian Parole Under 8 U.S.C. § 1182(d)(5)(A)**

Even if an individual is classified as an alien "seeking admission" subject to mandatory detention under § 1225, the INA provides that an applicant for admission "may be temporarily released on parole for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (quotation omitted). Specifically, 8 U.S.C. § 1182(d)(5)(A) provides that "[t]he Secretary of Homeland Security may . . . in his [or her] discretion parole into the United States temporarily under such conditions as he [or she] may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." *Id.* Parole of an alien subject to mandatory detention "shall not

be regarded as an admission of the alien." *Id.*[7] Specifically, "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (quotation omitted).

Section 1182(d)(5)(A) places some limits on humanitarian parole: "*when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served* the alien shall forthwith return or be returned to the custody from which he [or she] was paroled and thereafter his [or her] case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* (emphasis added).

Regulations implementing this provision of the INA outline further how immigration officials may revoke a detainee's humanitarian parole. Humanitarian parole under § 1182(d)(5)(A) "shall be automatically terminated without written notice . . . at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1)(ii).[8] At that point, "any order of exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed [elsewhere in the regulation] the public interest requires that the alien be continued in custody." *Id.* § 212.5(e)(2)(i).

---

[7] The INA further provides in its definitions section that "[a]n alien who is paroled under section 1182(d)(5) . . . shall not be considered to have been admitted." 8 U.S.C. § 1101(a)(13)(B).

[8] The implementing regulations also provide that parole "shall be automatically terminated without written notice . . . upon the departure from the United States of the alien[.]" 8 C.F.R. § 212.5(e)(1)(i). Because Petitioner did not depart from the United States after his parole into the country, the Court does not discuss this provision of the regulations below.

Not all grants of parole are subject to automatic termination. In cases where a parolee is not subject to the automatic termination of their parole, that parole "shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole." *Id.* § 212.5(e)(2)(i). But immigration officials may terminate the parole of an alien not subject to automatic termination only "*upon accomplishment of the purpose for which parole was authorized* or when in the opinion of one of the officials listed [elsewhere in the regulation], neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." *Id.* (emphasis added). And like parolees facing automatic termination, "any order of exclusion, deportation, or removal previously entered shall be executed" once written notice is provided to these parolees. *Id.* § 212.5(e)(2)(i). Likewise, "[i]f the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed [elsewhere in the regulation] the public interest requires that the alien be continued in custody." *Id.*

## III. Analysis

Petitioner argues that his detention is unlawful for three reasons. First, Petitioner contends that Respondents have unlawfully subjected him to the mandatory detention provision of 8 U.S.C. § 1225(b)(2), rather than the discretionary detention provision of 8 U.S.C. § 1226(a). (ECF No. 10 ¶¶ 51–53.) Second, Petitioner asserts that Respondents unlawfully revoked his parole "without providing any written notice that his parole had been terminated or any explanation for such action," in violation of 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e) (ECF No. 10 ¶¶ 54–56.) Third, Petitioner insists that Respondents have deprived him of due process of law in violation of the Fifth Amendment by subjecting him to prolonged detention without a bond hearing. (ECF No. 10 ¶¶ 57–61.) In response, Respondents contend

that Petitioner is properly detained pursuant to § 1225 and that he has received all the process he is due. (ECF No. 5, at 4, 11.)

The Court will grant the Amended Petition. Regardless of the statutory provision under which Petitioner is detained, Respondents have failed to provide Petitioner him with the process due under § 1182(d)(5)(A) and the Fifth Amendment. Because the Court concludes that Petitioner's due process rights have been violated, it need not reach his statutory argument. The Court will order Respondents to release Petitioner.

### A. **<u>Petitioner's Due Process Rights Have Been Violated</u>**

Petitioner contends that his detention violates is unlawful because it is predicated on the unlawful termination of his parole. (ECF No. 10 ¶¶ 54–56.) According to Petitioner, "DHS regulations require that parole 'shall be terminated upon written notice to the alien,' except in limited circumstances not present here." (ECF No. 10 ¶ 55 (quoting 8 C.F.R. § 212.5(e)).) Petitioner further argues that he did not receive "any meaningful explanation or individualized custody determination" prior to his detention, in violation of 8 U.S.C. § 1182(d)(5)(A) and its implementing regulations. (ECF No. 10 ¶ 29.)

Respondents counter that Petitioner's "due process rights extend no further than what the INA provides" and that, even if the Court determines that Petitioner's due process rights extend beyond the INA, those rights have not been violated. (ECF No. 5, at 14–19.)

Regardless of whether Petitioner's due process rights are defined by the INA alone or the Fifth Amendment, Respondents have failed to provide Petitioner with the process he is due in terminating Petitioner's parole. As a result, Petitioner's due process rights have been violated.

**1. The Court Will Consider the Process Due to Petitioner Under Both the Statutory Scheme and Under the *Mathews v. Eldridge* Framework**

Petitioner posits that the Court should analyze his due process rights under the Fifth Amendment and the framework established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). (ECF No. 10 ¶ 33.) Respondents contend that the INA alone defines Petitioner's due process rights. (ECF No. 5, at 14–16.)

Courts in this District have applied both standards. Some courts have determined that provisions of the INA alone outline the due process rights of parolees like Petitioner. *See Pipa-Aquise v. Bondi*, No. 1:25-cv-1094 (MSN), 2025 WL 2490657, at *2 (E.D. Va. Aug. 5, 2025) ("[A]n entering alien has only those rights concerning his admissibility as Congress has statutorily provided.") (quotation omitted); *Rodriguez v. Bondi*, No. 1:25-cv-791 (AJT), 2025 WL 2490670, at *3 (E.D. Va. June 24, 2025) ("Where an applicant is an arriving alien, due process only requires those rights regarding admission that Congress has provided by statute.") (quotations omitted). Others apply the *Mathews* framework to parolees like Petitioner. *See Pineda-Berrios v. Lyons*, No. 1:25-cv-2332 (LMB), 2026 WL 384159, at *5 (E.D. Va. Feb. 11, 2026).

Regardless of which due process framework the Court applies, the answer remains the same: Petitioner's due process rights have been violated.

**2. Respondents Have Not Provided Petitioner with the Process Due Under § 1182(d)(5)(A)**

Even if Petitioner's due process rights are defined by statute alone, Respondents have not provided Petitioner with due process.

The Court first observes that neither party has described in sufficient detail the statutory and regulatory scheme governing the revocation of parole. Respondents fail to cite the

regulations implementing § 1182(d)(5)(A), which explain the process by which Respondents may revoke parole and what protections Respondents must afford Petitioner. *See* 8 C.F.R. § 212.5(e)(1)–(2). Neither party analyzes the effect of the expiration of Petitioner's parole on his Amended Petition. The automatic expiration of an individual's parole typically determines whether or not that individual is entitled to notice before their parole is revoked.[9] 8 C.F.R. § 212.5(e)(1)(ii).

Respondents, meanwhile, do not acknowledge that regardless of the regulatory scheme, § 1182(d)(5)(A) itself provides that the Secretary of Homeland Security shall return an alien "to the custody from which was paroled" "when the purposes of such parole shall . . . have been served." Respondents offer no argument as to whether the purposes of Petitioner's parole have been served. The record itself is similarly bereft of any indication that the purposes of Petitioner's parole had or had not been served prior to his detention.

This Court has previously held that, when a petitioner is paroled into the United States and later asserts that his or her parole was unlawfully revoked, the respondents must explain whether the purposes of the petitioner's parole were served to ensure that the revocation was lawful. *Seleznev v. Mullin*, No. 3:26-cv-130 (MHL), ECF No. 13, at 9 (E.D. Va. Mar. 2, 2026).

Because Respondents make no argument to the contrary, the Court concludes that Respondents have deprived Petitioner of due process under the provisions of the INA by revoking his parole prior to the service of his parole's purposes.

---

[9] Although Respondents allege that Petitioner's parole "expired on December 3, 2022," (ECF No. 5-1 ¶ 8), they do not dispute Petitioner's contention that he was entitled to notice of the termination of his parole or an individualized explanation for the termination of his parole. Respondents also do not clarify whether Petitioner's parole was terminated automatically or by some other mechanism.

### 3. Respondents Also Have Not Provided Petitioner with the Process Due When Applying the *Mathews* Framework

The Court reaches the same answer when it instead applies the framework of *Mathews v. Eldridge*. *Mathews* requires courts to weigh three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and, (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335–36.

First, "[t]he interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Even if Respondents are correct that a parolee "does not have the same status for due process purposes as an alien who has effected entry," (ECF No. 5, at 16–17 (quotation omitted)), Petitioner still has a significant private interest in remaining free, *see Pineda-Berrios*, 2026 WL 384159, at *6 (finding parolee detained subject to § 1225 had a significant liberty interest).

Second, Petitioner faces a serious risk of the erroneous deprivation of his due process rights. As described above, Respondents place nothing on the record about whether the purposes of Petitioner's parole have been served, despite § 1182(d)(5)(A)'s requirement that an alien may be returned "to the custody from which he [or she] was paroled" "*when the purposes of such parole shall . . . have been served.*"[10] 8 U.S.C. § 1182(d)(5)(A) (emphasis added).

---

[10] Respondents acknowledge Petitioner's "claim that his parole was improperly revoked" but retort that "Petitioner's parole revocation does not determine whether his current detention is lawful." (ECF No. 5, at 17.) This conclusory assertion is incorrect. *A.A. v. Crawford*, No. 3:26-cv-301 (MHL), 2026 WL 1601798, at *9 (E.D. Va. June 4, 2026). To the contrary, if, as Petitioner asserts, Respondents detained Petitioner without properly revoking his parole, then

Third, Respondents have legitimate interests in immigration enforcement. "Congress has repeatedly shown that it considers immigration enforcement—even against otherwise non-criminal aliens—to be a vital public interest." *Miranda v. Garland*, 34 F.4th 338, 364 (4th Cir. 2022). But Respondents "remain subject to an obligation to effectuate [Petitioner's] detention in a manner that comports with due process. Nothing in this record explains why [Respondents] are unable to efficiently enforce the immigration laws . . . while also affording individuals with their core due process right: notice and an opportunity to be heard." *Pineda-Berrios*, 2026 WL 384159, at *7 (quotations omitted). Indeed, the record is bereft of any indication about whether Respondents have determined that the purposes of Petitioner's parole have been served. Respondents have provided Petitioner "with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond." *Id.*

Because all three *Mathews* factors weigh in his favor, the Court must find that Petitioner's due process rights under the Fifth Amendment have been violated.

### B. The Appropriate Remedy for the Violation of Petitioner's Due Process Rights is Immediate Release

Because Petitioner's due process rights have been violated, the Court must determine the appropriate remedy for that violation. Respondents revoked Petitioner's parole without any determination as to whether its purposes had been served. The only remedy for that violation of his due process rights is release. To be sure, Respondents may well determine that the purposes of Petitioner's parole have been served. But on the record before the Court, without any such determination, Petitioner's detention is improper. *See A.A.*, No. 3:26-cv-301, 2026 WL 1601798, at *12 (finding release to be the proper remedy where alien's parole was revoked without

---

Respondents deprived Petitioner of the process to which he is entitled under 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e). *Id.*

explanation); *Seleznev*, No. 3:26-cv-130, ECF No. 13, at 13–14 (same); *Darwich v. Kemerling*, No. 25-cv-1162, 2026 WL 170801, at *8 (M.D.N.C. Jan. 22, 2026) (same).

The Court will order Respondents to release Petitioner immediately and provide a date certain by which they will hold a hearing at which Respondents will make a determination as to whether the purposes of Petitioner's parole have been served.

Because the Court will order Petitioner's release on due process grounds, the Court need not reach Petitioner's arguments with respect to the statutory basis of his detention.

## IV. Conclusion

Because Respondents have failed to provide Petitioner with due process of law, the Court will grant the Amended Petition and order Petitioner's immediate release.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
Chief United States District Judge

Date: 10/13/26
Richmond, Virginia